BREAUX, C. J.
Defendant, a white laborer charged with having violated a labor contract, was indicted.
The indictment sets forth that he received an advance altogether of $12 on the day that he entered into the labor contract that he is charged with having violated.
The contract and its violation are charged in the indictment with having been entered into and violated oni one and the same day.
The defendant interposed a motion to quash the indictment on the ground that it is in contravention of and contrary to sections 1990 and 5526 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 1266, 3715]; that the statutes under which the indictment was founded is contrary to the Constitution of the United States and of the state; that it violates the guaranties of life, liberty, and property, and forces involuntary servitude, and denies to laborers equal protection of the laws.
The motion to quash was sustained in the district court, and the ground of unconstitutionality of the statute upheld.
The state appeals.
The statute decreed unconstitutional by the district court provided that whoever violates a contract of labor, upon the faith of *658 which money or goods have been advanced, shall be punished by fine in the sum of not less than $10 or over $200, or, in default of payment, 90 days or less imprisonment, at the discretion of the district court, unless the party had first tendered to the person, with whom he entered into the labor contract and from whom money or goods was obtained, the amount of money or the value of the goods obtained.
Defendant’s contention is that the statute in question is in contravention of section 1990 and section 5526 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 1266, 3715], which abolishes and denounces the system known as “peonage” and all attempts to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary services of any person as peonage in liquidation of any debt.
The system of peonage is a legacy of the Spanish government in the territory of New Mexico, whose traditions were too closely followed in that territory after its transfer to the United States.
The statutes before cited were enacted in order to put an end to that system in that territory, as well as in the other parts of the Union.
In addition to the foregoing sections, defendant invokes the protection of the thirteenth amendment to the Constitution of the United States, directed against slavery .and involuntary servitude.
The sections of the Revised Statutes referred to do not reach the statute (Act No. 50, p. 71, of 1802). They are directed against peonage, while the statute of the state does not sanction peonage.
Under the peonage system, a laborer is absolutely bound to his employer. He is absolutely compelled to stay and labor until he has paid his indebtedness. If he attempts to leave, or leaves, he can be restrained, or forced to return. The employer can sell his unexpired term to any one who will pay the amount due and assume the obligations of the master.
This the statute of this state does not for a moment contemplate.
We will not stop longer to consider the charge of the defendant that the state statute before cited is violative of the United States statute. To us it does not admit of much discussion.
The construction would be forced that would hold such a position correct and legal.
But it is said that this statute violates the thirteenth amendment of the Constitution of the United States, leveled against slavery and involuntary servitude.
The question of slavery is out of all consideration. But the defendant assumes that he has been subjected to involuntary servitude, and that, in consequence, he is entitled to relief.
He is not in a position to maintain any such contention, as we understand from the indictment. He willfully obtained a small amount from his employer on the day of his employment, and on the same day left. The indictment conveys the idea that he left without voluntary or involuntary servitude.
He has not been wronged in any way. The wrongdoing is his, and not his employer’s.
If the question were before us of an attempt on the part of the employer, because of his laborer’s indebtedness, to compel him to continue to perform his daily task, the result would, in all probability, be different. But here no such question presents itself.
There could not have been the least coercion by the master or employer to compel the continuance of the work. The laborer became the debtor willfully in order to obtain a small amount without performing any labor whatever. The employer did not deprive him of his liberty, but he deprived his em *660 ployer of his property. He went off with that which was not his, and for which he did not labor, and now his contention is that the statute is unconstitutional, and in its unconstitutionality does not reach even such an act of bad faith as that which he has committed.
There can be no law which prohibits the condemnation of such acts.
If no man has a right to keep another in involuntary servitude, no man by false words has the right to obtain the property of another and keep it as his own.
We think that the indictment before us and the averments therein to which defendant did not object are good and valid.
We have considered the jurisprudence of courts in other jurisdictions, and found that the abandonment of a contract is made a misdemeanor in South Carolina and in Alabama. In the former it was decided that the penalty did not violate the constitutional provision prohibiting involuntary servitude. State v. Williams, 32 S. C. 123, 10 S. E. 876.
We cite the foregoing decision only to the extent that it is corroborative of our own views. There is no need in our case to go to the extent to which it goes.
In another jurisdiction (Alabama) the statute was broader in its scope and bore heavily upon the laborer to the extent that the local courts held that it unnecessarily and illegally sought to restrain and to control the laborer. The statute was declared unconstitutional.
One of the decisions upon the subject is particularly interesting. Peonage Case (D. C.) 123 Fed. 680.
A careful reading of this decision will convince the impartial reader that the statute of Alabama was different from that of Louisiana. The former sought to coerce labor. The latter seeks to compel the laborer who obtains an amount on his contract to show that in. thus applying he acted in good faith.
See, also, Toney v. State (Ala. 1905) 37 South. 332, 67 L. R. A. 286, relating to the-Alabama law.
The question was recently taken up to the-Supreme Court of the United States by a certiorari to the Circuit Court of Appeals for the Fifth Circuit (Florida).
The decision reviews the anti-peonage laws. The learned and eminent court treats the-subject with great fairness. The court recognized in the Legislature the power to make unlawful and punish criminally an abandonment by an employé of his part of labor in any extreme cases. Clyatt v. U. S., 197 U. S. 221, 25 Sup. Ct. 429, 49 L. Ed. 726.
We gather from the unchallenged statement of the indictment that the case here can be classed among the extreme cases.
Legislation, not entirely similar, it is true, but which casts light upon the subject, has pronounced itself in favor of enactments making the breach of labor contracts criminal in certain cases.
The law of New York, following a statute of England, punishes the willful and malicious abandonment of a contract of service or hiring, the consequence of which may be the loss of life, great injury, or ruin of valuable property.
New Jersey has a law somewhat similar in its statute books; also a number of other-states.
It is also said that cases in which specific enforcement of labor contracts was refused by the courts “leave the question open, although in certain cases it was distinctly recognized that there might be liability to criminal punishment.”
In public interest, the violation of a contract may, in exceptional cases, be punished. Freund, Police Power, § 452.
If there are possibilities for committing a wrong under the statute attacked, or color for arbitrary acts in executing it, they are-not entitled to sanction. Section 3 of Act No. 50, p. 72, of 1892, is directed against arbitrary *662 acts of the employer. In the present -case such does not appear to have been the purpose.
We are pleased in thinking that there is a federal question involved which may in the course of time be taken to the Supreme Court of the United States.
It is therefore ordered, adjudged, and decreed that the judgment of the district court annulling and setting aside the indictment be reversed.
It is now ordered, adjudged, and decreed that the ease be reinstated, and the trial proceeded with according to law.